UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

x

ANGEL JESUS ALMONTE,
*Petitioner,*
A No. 222-514-652,

v.

KEN GENALO, New York Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement;
DAVID J. VENTURELLA, Senior Official Performing the Duties of Director, U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;
TODD BLANCHE, Attorney General of the United States; and
RAUL MALDONADO, JR., Warden, MDC Brooklyn
*Respondents.*

x

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND EMERGENCY MOTION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER**

## PRELIMINARY STATEMENT

1. ANGEL JESUS ALMONTE ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus under 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This application is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal, preserve this Court's jurisdiction, and require Respondents to certify the true statutory and factual cause of his detention.

2. Petitioner has not had adequate access to counsel since his arrest. He has not had a meaningful opportunity to confer with counsel, review the administrative record, examine the custody paperwork, or determine what statutory detention authority DHS claims to be invoking. Accordingly, the facts alleged herein are based on the limited information presently available to counsel, including summary interviews with family members or other witnesses, and are pleaded upon information and belief.

3. At the time of arrest, Petitioner does not know under which statutory provision DHS claimed authority to arrest and detain him. He does not know whether DHS was proceeding under 8 U.S.C. § 1231, and was not provided with full comprehensible custody or detention documents, any part of the administrative file, or any contemporaneous custodial documentation sufficient to determine which detention framework DHS intends to invoke. Under those circumstances—particularly where this Petition is being filed on an emergency basis

to preserve jurisdiction before transfer and before DHS has produced the record—Petitioner is compelled to plead in the alternative. That is not speculation for its own sake; it is a necessary response to DHS's failure to meaningfully explain the statutory basis for custody at the time liberty was first restrained.

4. Pleading in the alternative is expressly permitted by Federal Rule of Civil Procedure 8(d)(2)–(3), which allows alternative and even inconsistent theories, and the Second Circuit has held that a party may plead alternative theories without one theory being treated as an admission against another. *See Henry v. Daytop Village, Inc., 42 F.3d 89, 95*–96 (2d Cir. 1994); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 343* (2d Cir. 1994).

5. Petitioner Angel Jesus Almonte seeks emergency habeas relief under 28 U.S.C. § 2241. He is in federal immigration custody after ICE agents arrested him on the street in the Bronx, New York, on or about May 6, 2026.

6. The arrest was unlawful from the start. ICE was not looking for Petitioner. ICE was looking for another person. Petitioner was not the target of the operation. ICE had no judicial warrant for Petitioner. On information and belief, ICE had no administrative warrant naming Petitioner before the stop, pursuit, seizure, and arrest.

7. Respondents should be required to answer a basic question: if ICE was looking for someone else and had no individualized facts tying Petitioner to the target, what nonracial, nonethnic, individualized fact caused agents to single him out on the street?

8. On information and belief, the answer is that ICE used perceived race, ethnicity, national origin, Hispanic/Latino appearance, and presence in a predominantly immigrant community as a proxy for immigration status. That is racial profiling. It is not reasonable suspicion. It is not probable cause. It is not a lawful basis for a civil immigration arrest.

9. The Fourth Amendment does not permit immigration agents to stop and question a person merely because of perceived race, ethnicity, national origin, or appearance. *United States v. Brignoni-Ponce, 422 U.S. 873, 884-87* (1975). The Second Circuit recognizes that a race-based immigration stop may constitute an egregious constitutional violation. *Almeida-Amaral v. Gonzales, 461 F.3d 231, 235-36* (2d Cir. 2006).

10. The arrest also violated the Immigration and Nationality Act. A warrantless civil immigration arrest under 8 U.S.C. § 1357(a)(2) requires both reason to believe the person is removable and reason to believe the person is likely to escape before a warrant can be obtained. The Government cannot satisfy either requirement on the facts presently known.

11. After the arrest, DHS treated Petitioner as subject to detention under 8 U.S.C. § 1225. That classification was unlawful. Petitioner was not arrested at a port of entry. He was not apprehended at or near the border. He entered the United States in or about November 2022 and was arrested in the interior of the United States in May 2026, more than three years later.

12. Under controlling Second Circuit law, a noncitizen who entered without inspection, was not apprehended at or near the border, and was later arrested in the interior after living in the United States is detained, if at all, under 8 U.S.C. § 1226(a), not § 1225(b)(2)(A). *Cunha v. Freden, No. 25-3141-pr, 2026 WL 1146044* (2d Cir. Apr. 28, 2026).

13. Respondents may attempt to rely on a later Immigration Judge order dated May 27, 2026, and argue that Petitioner is now mandatorily detained under 8 U.S.C. § 1231. That argument does not defeat habeas review.

14. First, Respondents have not produced the complete immigration court record, the Immigration Judge's order, proof of service, proof that appeal rights were waived or expired, proof that no appeal or stay exists, or any record showing when the order allegedly became administratively final.

15. Second, even if Respondents can later prove that § 1231 now applies prospectively, § 1231 does not retroactively cure the unlawful May 6, 2026 street seizure, the racial profiling, the absence of a warrant, the absence of individualized suspicion, or the erroneous initial detention under § 1225.

16. Habeas requires the Government to identify the true and lawful cause of custody. 28 U.S.C. § 2243. Respondents may not arrest first, misclassify detention under the wrong statute, deny meaningful process, obtain a later removal order, and then use § 1231 as a post-hoc justification for what was unlawful when it occurred.

17. Petitioner asks this Court to issue an emergency Order to Show Cause, prohibit transfer or removal while this Court reviews the legality of custody, require Respondents to produce the complete arrest, custody, and immigration-court record, preserve and produce the video of the arrest, and order Petitioner's immediate release.

18.

PETITIONER

14. Petitioner Angel Jesus Almonte is a native and citizen of the Dominican Republic.

15. Petitioner was born in 2000.

16. Petitioner's Alien Registration Number is 222-514-652.

17. Petitioner is single and has no children.

18. Petitioner has no known criminal arrests, convictions, or criminal history in the United States.

19. Petitioner has significant community ties in New York.

20. Petitioner is in a relationship with Leslie Marie Martinez, a United States citizen who resides in the Bronx, New York.

21. Petitioner is willing to comply with any lawful release conditions, including ICE reporting, immigration court appearances, supervision, electronic monitoring if ordered, and residence at a stable address.

IMMIGRATION HISTORY

22. Petitioner entered the United States on or about November 1, 2022, through Texas.

23. Upon information and belief, Petitioner entered without inspection.

24. Petitioner was not apprehended by United States Border Patrol or immigration authorities at or near the border at the time of entry.

25. Petitioner was not placed into expedited removal at the border.

26. Petitioner was not an arriving alien at a port of entry when ICE arrested him in May 2026.

27. After entering the United States, Petitioner resided in New York and developed community and family ties.

28. On information and belief, DHS did not charge Petitioner at or near the time of entry.

29. On information and belief, DHS did not detain Petitioner until May 6, 2026.

30. Because Petitioner was arrested in the interior more than three years after entry, and because he was not apprehended at or near the border, his detention cannot lawfully be treated as mandatory detention under § 1225(b)(2)(A). *Cunha v. Freden, No. 25-3141-pr, 2026 WL 1146044* (2d Cir. Apr. 28, 2026).

THE ILLEGAL ARREST

31. On or about May 6, 2026, ICE officers and/or agents encountered Petitioner in the Bronx, New York.

32. According to information provided by Ms. Martinez, ICE agents were looking for another person.

33. Petitioner was not the person ICE came to find.

34. Petitioner was not the target of the operation.

35. On information and belief, ICE agents did not have a judicial warrant authorizing Petitioner's arrest.

36. On information and belief, ICE agents did not have a judicial warrant authorizing entry into any private area connected to Petitioner.

37. On information and belief, ICE agents did not have an administrative immigration warrant naming Petitioner before they approached, pursued, detained, or arrested him.

38. On information and belief, ICE agents did not have individualized facts establishing that Petitioner was removable before they singled him out.

39. On information and belief, ICE agents did not have individualized facts establishing that Petitioner was likely to escape before an administrative warrant could be obtained.

40. According to information provided by Ms. Martinez, Petitioner ran when agents approached.

41. ICE agents pursued Petitioner and detained him.

42. Petitioner's alleged flight, after being approached by ICE agents who were looking for someone else, did not identify him as removable, did not establish alienage, did not establish inadmissibility, did not establish a likelihood of escape before a warrant could be obtained, and did not cure the absence of individualized suspicion at the beginning of the encounter.

43. Upon information and belief, ICE selected Petitioner for pursuit and seizure based on perceived race, ethnicity, national origin, Hispanic/Latino appearance, and presence in the area, rather than individualized facts showing that Petitioner was the target of the operation or had violated immigration law.

44. This use of perceived race, ethnicity, national origin, or appearance as an enforcement technique is unlawful. Brignoni-Ponce, 422 U.S. at 884-87; Almeida-Amaral, 461 F.3d at 235-36.

45. There is reportedly a video recording of the arrest and detention.

46. The video is material evidence. It should be preserved and produced because it may show the location of the encounter, the conduct of the agents, whether agents identified themselves, whether they

displayed weapons, what they said, whether Petitioner was free to leave, whether racial or ethnic profiling occurred, whether force was used, and whether ICE had any individualized basis to seize Petitioner.

47. After the arrest, Petitioner was placed in ICE custody.

48. On information and belief, DHS treated Petitioner as detained under 8 U.S.C. § 1225.

49. The § 1225 classification was unlawful because Petitioner was an interior arrestee who had entered the United States years earlier and was not apprehended at or near the border.

IMMIGRATION COURT PROCEEDINGS

50. Following his detention, removal proceedings were conducted before the Immigration Court.

51. Petitioner was previously represented by attorney Leslie Linares Polanco.

52. Based on information presently available to Petitioner's family, prior counsel was retained only for purposes of seeking a bond hearing.

53. Petitioner's family presently has only limited records from the immigration proceedings, including a copy of the Notice to Appear and a motion seeking withdrawal of counsel.

54. Petitioner's family has been unable to determine the full scope of prior counsel's representation, what relief was requested, what evidence was submitted, what positions DHS took, what statutory detention authority DHS invoked, whether a bond hearing was denied because of § 1225, or what advice Petitioner received about appeal rights.

55. According to information presently available, an Immigration Judge entered an order directing Petitioner's removal on May 27, 2026.

56. Petitioner's family has not been provided a complete copy of the Immigration Judge's order, the transcript, the exhibits, the custody record, the appeal-rights advisals, any appeal waiver, or any record showing whether a BIA appeal, motion to reopen, motion to reconsider, stay motion, or other post-order remedy was filed.

57. Respondents have not shown that the May 27, 2026 order is administratively final.

58. Respondents have not shown when the removal period under 8 U.S.C. § 1231 allegedly began.

59. Respondents have not shown that no appeal, stay, reopening, or other proceeding affects the alleged removal period.

60. Respondents have not shown that Petitioner knowingly and voluntarily waived appeal.

61. Respondents have not shown that any alleged final order can retroactively validate the unlawful May 6, 2026 arrest or the erroneous initial detention under § 1225.

DETENTION AND CONTINUING HARM

62. Petitioner remains in immigration custody.

63. Petitioner's detention is a severe deprivation of liberty.

64. Petitioner's detention has separated him from his loved ones and community.

65. Petitioner's detention prevents him from meaningfully assisting counsel in investigating the arrest, obtaining the video, reviewing the immigration court record, pursuing post-order remedies, and preparing any motion to reopen or stay.

66. Petitioner has no known criminal history.

67. Petitioner has significant release factors, including community ties in New York, a United States citizen girlfriend, no known criminal arrests or convictions, and willingness to comply with supervision.

68. The Government has not provided a lawful and timely individualized custody determination under the correct statute.

69. The Government has not produced the documents necessary to test the legality of custody.

70. Petitioner does not seek to avoid lawful proceedings. He seeks release from unlawful custody so that he may pursue his immigration case and available remedies with counsel.

## JURISDICTION, VENUE, AND PARTIES

71. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody and challenges that custody as unlawful under the Constitution, statutes, and regulations of the United States.

72. This Court has authority under 28 U.S.C. § 2243 to issue the writ or order Respondents to show cause and to require Respondents to certify the true cause of detention.

73. This Court has authority under the All Writs Act, 28 U.S.C. § 1651, to preserve its jurisdiction, prevent removal or transfer that would frustrate habeas review, and order appropriate interim relief.

74. Venue is proper in this District if Petitioner is detained in this District, including at MDC Brooklyn, or if Respondents exercise custody and control over Petitioner from this District. If Petitioner is detained outside this District at the time of filing, the caption, venue allegations, and immediate custodian should be conformed to the district of confinement and the proper custodian.

75. Respondent Ken Genalo is sued in official capacity as the New York Field Office Director for ICE Enforcement and Removal Operations and as a supervisory official responsible for Petitioner's arrest, detention, custody classification, transfer, and removal.

76. Respondent David J. Venturella is sued in official capacity as the Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement.

77. Respondent Markwayne Mullin is sued in official capacity as Secretary of the United States Department of Homeland Security.

78. Respondent Todd Blanche is sued in official capacity as Attorney General of the United States.

79. Respondent Raul Maldonado , Jr. is sued in official capacity as Petitioner's immediate physical custodian.

## LEGAL FRAMEWORK

### A. Habeas requires the Government to identify the real authority for custody.

80. Habeas protects against unlawful executive detention. The writ is a prompt remedy for unlawful physical restraint. 28 U.S.C. §§ 2241, 2243.

81. The Government must certify the true cause of detention. 28 U.S.C. § 2243.

82. The "true cause" of detention means the actual legal and factual basis for custody, supported by actual records, not a later litigation theory.

83. Freedom from physical restraint lies at the core of due process. *Zadvydas v. Davis, 533 U.S. 678, 690* (2001).

84. The ordinary habeas remedy for unlawful executive detention is release. *Munaf v. Geren, 553 U.S. 674, 693* (2008); *Preiser v. Rodriguez, 411 U.S. 475, 484* (1973).

B. Immigration stops and arrests inside the United States require individualized suspicion.

85. The Fourth Amendment applies to civil immigration arrests and seizures inside the United States. *INS v. Lopez-Mendoza, 468 U.S. 1032, 1043* (1984); Almeida-Amaral, 461 F.3d at 234.

86. A brief immigration stop requires specific, articulable facts, together with rational inferences, that reasonably warrant suspicion that the person may be unlawfully present. *Terry v. Ohio, 392 U.S. 1, 21-22* (1968); Brignoni-Ponce, 422 U.S. at 884.

87. Perceived race, ethnicity, Hispanic/Latino appearance, or national origin cannot be the sole basis for an immigration stop. Brignoni-Ponce, 422 U.S. at 884-87.

88. The Second Circuit recognizes that a race-based immigration stop may be an egregious constitutional violation. Almeida-Amaral, 461 F.3d at 235-36.

89. DHS regulations likewise require reasonable suspicion for a brief detention for questioning. 8 C.F.R. § 287.8(b)(2).

90. A warrantless civil immigration arrest requires both reason to believe that the person is removable and reason to believe that the person is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2).

91. DHS regulations provide that a warrant shall be obtained except when the designated immigration officer has reason to believe the person is likely to escape before a warrant can be obtained. 8 C.F.R. § 287.8(c)(2)(ii).

92. Probable cause and statutory arrest authority must exist at the moment of arrest. *Beck v. Ohio, 379 U.S. 89, 96* (1964). Later paperwork cannot cure an arrest that was unlawful when made. *United States v. Di Re, 332 U.S. 581, 595* (1948).

C. Sections 1225, 1226, and 1231 have different functions.

93. Section 1225 applies to applicants for admission and certain arriving-alien or border-related contexts. 8 U.S.C. § 1225.

94. Section 1226 governs detention during ordinary removal proceedings before the removal order becomes administratively final. 8 U.S.C. § 1226.

95. Section 1226(a) is discretionary. It permits detention or release on bond or conditional parole unless mandatory detention under § 1226(c) applies. 8 U.S.C. § 1226(a)-(c).

96. Section 1226(c) has not been shown to apply here because Petitioner has no known criminal arrests, convictions, or criminal history, and Respondents have not identified a criminal or terrorism-related mandatory-detention ground.

97. The Second Circuit has rejected the Government's broad theory that long-present interior arrestees who entered without inspection are mandatorily detained under § 1225(b)(2)(A). *Cunha v. Freden, No. 25-3141-pr, 2026 WL 1146044* (2d Cir. Apr. 28, 2026).

98. Under Cunha, Petitioner belongs under § 1226(a), not § 1225(b)(2)(A), because he entered in or about November 2022, was not apprehended at or near the border, lived in the United States for years, and was later arrested in the Bronx in May 2026.

99. Section 1231 applies only after a removal order becomes administratively final and the removal period begins. 8 U.S.C. § 1231(a)(1)(B); *Johnson v. Guzman Chavez, 594 U.S. 523, 527-29, 535-36* (2021).

100. Whether § 1231 applies depends on actual records, including the Immigration Judge's order, proof of service, appeal advisals, any waiver, the expiration of the appeal period, any BIA appeal, any stay, and any reopening or reconsideration history. 8 C.F.R. § 1241.1.

101. Respondents have not produced those records.

102. Even if Respondents later prove that § 1231 now applies prospectively, § 1231 does not retroactively authorize the May 6, 2026 arrest, does not cure the erroneous initial § 1225 classification, and does not erase the failure to provide the correct custody process when liberty was first taken.

103. Agencies may not defend an action on new grounds created after the fact. *SEC v. Chenery Corp., 318 U.S. 80, 94* (1943); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 20-23* (2020).

104. Courts in this Circuit have applied that principle in immigration detention cases and have rejected post-hoc efforts to recharacterize detention authority after an unlawful arrest or custody decision. *See Yao v. Almodovar, 813 F. Supp. 3d 461, 476-77* (S.D.N.Y. 2025); *Gopie v. Lyons, No. 25-CV-05229-SJB, 2025 WL 3167130* (E.D.N.Y. Nov. 13, 2025); *Inestroza Carbajal v. Frazier, No. 26-CV-2778, 2026 WL 1309265* (E.D.N.Y. May 12, 2026); *Pastrana-Beltran v. Mullin, No. 26-CV-2657, 2026 WL 1398609* (E.D.N.Y. May 19, 2026).

D. Section 1226(a) requires a real custody decision before or at the time of detention.

105. Section 1226(a) and the implementing regulations require a real, individualized custody determination based on danger and flight risk before or contemporaneous with detention.

106. A later bond process does not necessarily cure the absence of a lawful first custody decision. A bond redetermination assumes that DHS first made a valid custody determination under the correct statute. Gopie, 2025 WL 3167130.

107. Courts in this District and the Southern District have ordered release where DHS arrested or detained noncitizens without the lawful § 1226(a) process required at the outset. *See Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274* (E.D.N.Y. 2025); *Hyppolite v. Noem, No. 25-CV-4304* (E.D.N.Y. Oct. 6, 2025); *Artiga v. Genalo, No. 25-CV-5208* (E.D.N.Y. Oct. 5, 2025); Gopie, 2025 WL 3167130; *Tumba Huamani v. Francis, No. 25-CV-8110, 2025 WL 3079014* (S.D.N.Y. Nov. 4, 2025); *Lopez Benitez v. Francis, 795 F. Supp. 3d 475* (S.D.N.Y. 2025); *Kelly v. Almodovar, No. 25-CV-6448, 2025 WL 2381591* (S.D.N.Y. Aug. 15, 2025).

## CLAIM ONE

**THE STREET STOP, PURSUIT, AND ARREST VIOLATED THE FOURTH AMENDMENT, 8 U.S.C. § 1357(a)(2), AND DHS REGULATIONS.**

108. Petitioner repeats and realleges the preceding paragraphs.
109. ICE was looking for another person.
110. Petitioner was not the target.
111. ICE had no judicial warrant for Petitioner.
112. ICE had no individualized facts connecting Petitioner to the person ICE was seeking.
113. ICE had no individualized facts establishing that Petitioner was removable.
114. ICE had no individualized facts establishing that Petitioner was likely to escape before a warrant could be obtained.
115. Upon information and belief, ICE singled out Petitioner because of perceived race, ethnicity, national origin, Hispanic/Latino appearance, and presence in the area.
116. That is unlawful racial profiling.
117. Perceived race, ethnicity, national origin, or Hispanic/Latino appearance cannot create reasonable suspicion. Brignoni-Ponce, 422 U.S. at 884-87.
118. A race-based immigration seizure may be an egregious constitutional violation. Almeida-Amaral, 461 F.3d at 235-36.
119. Petitioner's alleged flight after agents approached him while looking for someone else did not retroactively create lawful grounds for the initial stop, pursuit, or seizure.
120. Section 1357(a)(2) is conjunctive. ICE needed reason to believe Petitioner was removable and reason to believe he was likely to escape before a warrant could be obtained.
121. Respondents have not shown either requirement.
122. ICE also failed to comply with 8 C.F.R. § 287.8(b)(2) and § 287.8(c)(2)(ii).
123. Because the arrest was unlawful when made, later charging papers, custody papers, or a later removal order cannot cure the Fourth Amendment and statutory defects.
124. The Court should order Respondents to produce all arrest records, body-worn camera footage, surveillance footage, video recordings, radio transmissions, dispatch records, warrants, agent notes, database queries, and supervisory approvals related to the May 6, 2026 arrest.

**CLAIM TWO**
**DHS UNLAWFULLY CLASSIFIED PETITIONER UNDER § 1225 EVEN THOUGH § 1226(a) GOVERNED HIS DETENTION.**

125. Petitioner repeats and realleges the preceding paragraphs.
126. At the time of arrest and initial detention, DHS treated Petitioner as detained under 8 U.S.C. § 1225.
127. That classification was erroneous.
128. Petitioner entered the United States in or about November 2022.
129. Petitioner was not apprehended at or near the border.

130. Petitioner lived in the United States for more than three years before ICE arrested him in the Bronx.

131. Petitioner was arrested in the interior of the United States.

132. Petitioner was not an arriving alien at a port of entry.

133. Under Cunha, § 1226(a), not § 1225(b)(2)(A), governs this type of interior arrest.

134. DHS's erroneous reliance on § 1225 deprived Petitioner of the discretionary custody process required under § 1226(a).

135. DHS's erroneous reliance on § 1225 also made ordinary immigration bond review futile or unavailable because DHS and the BIA have taken the position that many people classified under § 1225(b) are not eligible for Immigration Judge bond jurisdiction. See *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

136. In the Second Circuit, that no-bond § 1225 theory cannot be applied to Petitioner's interior arrest. *Cunha,* No. 25-3141-pr, 2026 WL 1146044.

137. Respondents cannot avoid habeas review by relying on a statute that did not lawfully govern Petitioner's detention at the time liberty was first taken.

**CLAIM THREE**

**§ 1231 DOES NOT RETROACTIVELY CURE THE UNLAWFUL ARREST OR THE ERRONEOUS INITIAL § 1225 DETENTION.**

138. Petitioner repeats and realleges the preceding paragraphs.

139. Respondents may argue that an Immigration Judge entered a removal order on May 27, 2026.

140. Respondents may also argue that Petitioner is now mandatorily detained under 8 U.S.C. § 1231(a)(2).

141. That argument fails on the present record.

142. Section 1231 applies only after a removal order is administratively final and the removal period begins. 8 U.S.C. § 1231(a)(1)(B); *Johnson v. Guzman Chavez, 594 U.S. 523, 527-29, 535-36* (2021).

143. Respondents have not produced the Immigration Judge's order.

144. Respondents have not produced proof that the order was served.

145. Respondents have not produced proof that Petitioner knowingly and voluntarily waived appeal.

146. Respondents have not produced proof that the appeal period expired.

147. Respondents have not produced proof that no BIA appeal was filed.

148. Respondents have not produced proof that no stay, motion to reopen, motion to reconsider, petition for review, or other proceeding affects the alleged removal period.

149. Respondents have not produced the custody records identifying when and why DHS allegedly changed Petitioner's detention authority from § 1225 to § 1231.

150. Without those records, Respondents have not shown that § 1231 currently applies.

151. Even if Respondents later prove that a removal order became administratively final after May 27, 2026, § 1231 would not retroactively validate Petitioner's May 6, 2026 arrest.

152. Section 1231 would not retroactively validate DHS's erroneous initial reliance on § 1225.

153. Section 1231 would not retroactively supply individualized suspicion for the street stop.
154. Section 1231 would not retroactively supply a warrant.
155. Section 1231 would not retroactively satisfy § 1357(a)(2).
156. Section 1231 would not retroactively provide the § 1226(a) custody process Petitioner should have received before or at the time DHS first detained him.
157. The legality of custody must be judged by the actual grounds and actual authority invoked when the Government took liberty away.
158. Agencies may not rely on post-hoc rationalizations to defend earlier unlawful action. Chenery, 318 U.S. at 94; Regents, 591 U.S. at 20-23.
159. Courts in this Circuit have rejected post-hoc recharacterizations of immigration detention authority. *Yao,* 813 F. Supp. 3d at 476-77; *Gopie,* 2025 WL 3167130; *Inestroza Carbajal*, 2026 WL 1309265; *Pastrana-Beltran*, 2026 WL 1398609.
160. A later removal order may create a new question about current custody only if Respondents prove finality and lawful § 1231 authority. It does not erase the earlier unlawful arrest and detention.
161. Because Petitioner's detention was unlawful from the start, the appropriate habeas remedy is release. *Munaf,* 553 U.S. at 693; *Tumba Huamani*, 2025 WL 3079014.

## CLAIM FOUR
## DETENTION WITHOUT A TIMELY, INDIVIDUALIZED CUSTODY DETERMINATION UNDER THE CORRECT STATUTE VIOLATES DUE PROCESS.

162. Petitioner repeats and realleges the preceding paragraphs.
163. Petitioner was detained under the wrong statute.
164. Petitioner should have been treated under § 1226(a), not § 1225.
165. Under § 1226(a), DHS was required to make a real, individualized custody determination based on danger and flight risk.
166. DHS did not make a lawful custody determination under the correct statute before or contemporaneous with Petitioner's detention.
167. DHS did not meaningfully consider Petitioner's release factors, including his lack of criminal history, community ties, stable relationship with a United States citizen, and willingness to comply with supervision.
168. DHS did not identify Petitioner as dangerous.
169. DHS did not identify facts showing that Petitioner posed a flight risk sufficient to justify detention.
170. DHS instead relied on an unlawful § 1225 classification and kept Petitioner detained without the process required by § 1226(a) and the Due Process Clause.
171. A later bond hearing, if any, does not cure the absence of a valid initial custody determination. Gopie, 2025 WL 3167130.
172. The due process violation occurred when Petitioner was first arrested and detained without lawful authority and without the correct custody process.
173. Petitioner is entitled to habeas relief and release.

**CLAIM FIVE**
**A BOND-HEARING REMEDY IS FUTILE OR INADEQUATE HERE.**

174. Petitioner does not ask this Court to reweigh bond. He challenges the Government's threshold power to detain him at all. Exhaustion is not jurisdictional in this setting and is excused where the agency remedy is futile or inadequate. *McCarthy v. Madigan, 503 U.S. 140, 146-49* (1992); *Howell v. INS, 72 F.3d 288, 291* (2d Cir. 1995).
175. *Matter of Yajure-Hurtado* held that immigration judges lack authority to grant bond to many people DHS treats as detained under § 1225(b)(2)(A). 29 I. & N. Dec. 216, 216, 226-27 (BIA 2025). If DHS uses that theory here, the agency's own position makes bond unavailable.
176. Recent public sources confirm the same practical problem. TRAC reported that immigration judges had conducted 28,951 bond hearings through February 2026 and granted bond in 8,050 cases, a grant rate of about 27.8%. *Bloomberg Law* reporters observed 55 bond hearings in February and March 2026 and reported that judges set bond in only 15; some judges said they believed they lacked authority. A May 2026 public-data analysis found that 2025 had the lowest bond grant rate on record and that the first four months of 2026 were lower still.
177. Reuters, as summarized by the Immigration Policy Tracking Project, reported that federal data showed a 70% monthly drop in bond hearings from January to February 2026 and that grants fell from 1,086 to 326. AILA reported that after the *Maldonado Bautista* orders, EOIR guidance told immigration judges that *Matter of Yajure-Hurtado* remained binding, and members reported widespread denials of bond hearings. NILC later reported that the February 18, 2026 order was paused outside the Central District of California while the appeal proceeded.
178. This record shows why habeas is needed. The ordinary bond system cannot be assumed to provide prompt and meaningful review when DHS's theory and BIA precedent deny bond jurisdiction at the threshold. Requiring Petitioner to exhaust that process would only prolong unlawful custody.

**CLAIM SIX**
**RACIAL PROFILING AND SELECTIVE IMMIGRATION ENFORCEMENT VIOLATED THE FIFTH AMENDMENT EQUAL PROTECTION COMPONENT AND THE FOURTH AMENDMENT.**

179. Petitioner repeats and realleges the preceding paragraphs.
180. ICE was not looking for Petitioner.
181. ICE had no warrant for Petitioner.
182. ICE had no individualized facts showing that Petitioner was removable.
183. ICE had no individualized facts showing that Petitioner was likely to escape before a warrant could be obtained.
184. Upon information and belief, ICE singled out Petitioner because agents perceived him to be Latino, Hispanic, foreign-born, or otherwise a person likely to be subject to immigration enforcement.

185. Race, ethnicity, national origin, and appearance are not substitutes for individualized suspicion.

186. The Constitution does not permit immigration agents to use racial profiling as an investigative technique to select people for immigration questioning, pursuit, seizure, or arrest.

187. The facts presently known support an inference of racial profiling because ICE was looking for someone else and there is no known nonracial, nonethnic fact explaining why agents selected Petitioner.

188. Respondents should be ordered to produce the complete arrest record, including video evidence, agent reports, target packets, operational plans, warrants, photographs, briefing materials, radio logs, body-worn camera footage, and any documents showing how agents selected Petitioner for pursuit and detention.

189. If Respondents cannot identify individualized nonracial facts supporting the stop, pursuit, and arrest, the Court should find the seizure unlawful and order release.

## CLAIM SEVEN
## RESPONDENTS VIOLATED ACCARDI BY FAILING TO FOLLOW BINDING STATUTES AND REGULATIONS.

185. Petitioner repeats and realleges the preceding paragraphs.

186. *Under Accardi v. Shaughnessy, 347 U.S. 260, 267-68* (1954), an agency must follow its own binding rules.

187. The Second Circuit applies the Accardi doctrine in immigration cases. *Montilla v. INS, 926 F.2d 162, 166-69* (2d Cir. 1991).

188. The rules at issue here protect liberty.

189. ICE was required to comply with the Fourth Amendment, 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8, 8 C.F.R. § 287.3, 8 C.F.R. § 236.1, and 8 C.F.R. § 1236.1.

190. ICE failed to comply with those rules.

191. ICE lacked individualized suspicion for the stop.

192. ICE lacked a warrant.

193. ICE lacked reason to believe Petitioner was likely to escape before a warrant could be obtained.

194. ICE classified Petitioner under the wrong detention statute.

195. ICE failed to provide a timely and meaningful individualized custody determination under § 1226(a).

196. ICE failed to produce the documents necessary to challenge custody.

197. These failures violated Accardi, the INA, DHS regulations, and due process.

## CLAIM EIGHT
## A BOND-HEARING REMEDY IS FUTILE OR INADEQUATE.

198. Petitioner repeats and realleges the preceding paragraphs.

199. Petitioner does not ask this Court merely to reweigh bond.

200. Petitioner challenges the Government’s threshold authority to arrest and detain him at all.

201. Exhaustion is not jurisdictional in this setting and is excused when administrative remedies are futile, inadequate, or incapable of providing the relief requested. *McCarthy v. Madigan, 503 U.S. 140, 146-49* (1992); *Howell v. INS, 72 F.3d 288, 291* (2d Cir. 1995).

202. A bond hearing cannot cure an unconstitutional arrest.

203. A bond hearing cannot cure racial profiling.

204. A bond hearing cannot cure DHS's use of the wrong detention statute.

205. A bond hearing cannot retroactively create a valid initial custody determination.

206. DHS's § 1225 theory also makes the bond process futile because DHS and the BIA have treated many people classified under § 1225(b) as ineligible for Immigration Judge bond jurisdiction. *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

207. Although Cunha rejects that theory for interior arrestees in the Second Circuit, Petitioner has already been harmed by DHS's erroneous use of § 1225.

208. Habeas is necessary because the administrative process cannot provide prompt and complete relief from the unlawful arrest, racial profiling, statutory misclassification, and detention without lawful process.

## CLAIM NINE
## RESPONDENTS MUST PRODUCE THE FULL ARREST, CUSTODY, AND IMMIGRATION COURT RECORD NOW.

209. Petitioner repeats and realleges the preceding paragraphs.

210. Section 2243 requires Respondents to certify the true cause of detention.

211. A conclusory declaration is not enough.

212. The Court cannot decide the legality of custody without the actual records.

213. Respondents should be ordered to produce the complete A-file and all arrest, custody, detention, transfer, and removal records.

214. Required records include, but are not limited to:

a. any judicial warrant;
b. any administrative warrant, including Form I-200 or I-205;
c. any Form I-213;
d. any Form I-286;
e. any Form I-862 Notice to Appear;
f. any custody determination form;
g. any bond determination or bond denial;
h. any document identifying § 1225, § 1226, or § 1231 as the basis for custody;
i. any document showing when DHS allegedly changed the statutory basis for custody;
j. any arrest report;
k. any target packet;
l. any operational plan;
m. any supervisory approval;
n. any database query;

o. any body-worn camera footage;
p. any surveillance footage;
q. any video recording of the arrest;
r. any radio transmissions or dispatch records;
s. any property records;
t. the complete Immigration Court record;
u. the May 27, 2026 Immigration Judge order;
v. the transcript or audio of the removal hearing;
w. proof of service of the Immigration Judge order;
x. advisal of appeal rights;
y. any appeal waiver;
z. any BIA appeal record;
aa. any stay request;
bb. any motion to reopen or reconsider;
cc. any removal travel document or removal arrangements; and
dd. any record supporting Respondents' claim that Petitioner is presently detained under § 1231.

215. This is not ordinary discovery. It is the minimum record necessary for habeas review.

216. If Respondents cannot produce records showing lawful arrest and lawful detention authority, the writ should issue and Petitioner should be released.

## CLAIM TEN
## PETITIONER PRESERVES HIS REQUEST FOR EAJA FEES.

217. Petitioner repeats and realleges the preceding paragraphs.

218. Petitioner preserves his right to seek attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, if he prevails or obtains the relief requested.

219. EAJA permits fees to a prevailing party in a civil action against the United States unless the Government's position was substantially justified or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

## REQUEST FOR EMERGENCY RELIEF

Petitioner respectfully asks this Court to issue an Order to Show Cause under 28 U.S.C. § 2243 and to enter temporary relief preserving this Court's jurisdiction and Petitioner's access to counsel. Petitioner requests that the Court:

a) Prohibiting Respondents from transferring Petitioner outside this District absent further order of this Court

b) directing Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

c) directing Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243; requiring production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, as well as all DHS and ICE custody, detention, and administrative records, with appropriate relief for noncompliance;

d) producing Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; and upon adjudication of the Petition,

e) granting the writ of habeas corpus and ordering Petitioner's immediate release from unlawful detention;

f) awarding reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should Petitioner prevail in this action;

g) ordering that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), that Petitioner be "entitled to release from the unlawful restrictions on his liberty which means, in the circumstances here, restoration of... the status quo ante." *Khabazha v. United States Immigr. & Customs Enf't, No. 25-cv-5279, 2025 WL 3281514, at* *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention]... including the ankle monitor and reporting requirements") and "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Id. See Ccorihuaman v. Genalo No. 26-cv-554* (E.D.N.Y. Feb 6, 2026) and

h) ordering that Respondents shall return to Petitioner all personal property belonging to Petitioner that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's detention; and

i) Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

s/ S. Michael Musa-Obregon

S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
Dated: [DATE]
New York, New York

VERIFICATION BY COUNSEL PURSUANT TO 28 U.S.C. § 2242

I submit this verification on behalf of Petitioner because I am one of Petitioner's attorneys. The facts in this Petition are based on information provided by Petitioner's family, available records, counsel's investigation, and counsel's review of the case file. On that basis, I verify that the statements in this Petition are true and correct to the best of my knowledge and belief.

Dated: 6/16/26

/ S. Michael Musa- Obregon

S. Michael Musa-Obregon, Esq.

CERTIFICATE OF SERVICE

I certify that on 6/17/26, I caused the foregoing Petition, Emergency Motion, and proposed Order to Show Cause to be served by electronic mail and/or certified mail on the United States Attorney's Office for the Eastern/Southern District of New York, Civil Division, and on counsel for Respondents. I also caused service on Respondents in their official capacities through the United States Attorney as permitted by applicable rule.

/ S. Michael Musa - Obregon

S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
New York, New York